Shaw *et al. v.* The Merchants National Bank *et al.*

———◆———

## SHAW ET AL. *v.* THE MERCHANTS NATIONAL BANK ET AL.

PRACTICE.—*Supreme Court.—Assignment of Error.—Record.*—Where the record of a cause fails to show the filing of any demurrer, an assignment of error, alleging an erroneous ruling on a demurrer, presents no question for the decision of the Supreme Court.

SAME.— *Uncertainty in Pleading.*—Uncertainty in a pleading is reached, not by demurrer, but by motion to make certain.

SAME.—*Complaint Cured by Verdict.*—A pleading which is insufficient on demurrer may, in some instances, in the absence of a demurrer, be cured by the verdict.

SAME.—*Motion for Judgment.—Bill of Exceptions.*—Where, on appeal to the Supreme Court, error is assigned upon a ruling of the court on a motion for judgment on the verdict and special findings of the jury, the ruling itself, the grounds thereof and the exception of the party objecting to the ruling must be made part of the record by a bill of exceptions.

SAME.— *Venire de novo.— When Motion for Made.*—A motion for a *venire de novo*, on account of alleged defects in the verdict, must precede judgment on the verdict, rendered on the motion of the same party.

SAME.—*Common Law.—Discretion of Court.*—A motion for a *venire de novo* is not provided for in the code of practice of this State, but is a resort by the courts of this State to common-law practice, and the granting of a *venire de novo* is a matter in the discretion of the court, subject to review for abuse.

From the Hamilton Circuit Court.

*J. W. Evans, R. R. Stephenson, T. J. Kane, A. F. Shirts,* *G. Shirts* and *W. R. Fertig,* for appellants.

*J. T. Dye, A. C. Harris* and *J. O'Brien,* for appellees.

PERKINS, J.—At a certain point in the progress of this cause, the court made the following order:

" Come the parties by their attorneys, and, by order of the court, this cause is continued to the next term of this court, with leave to the parties to amend all the pleadings and to form new issues, because the record, in its present confused condition, is too complicated to be readily understood."

At the term to which the cause was continued, James Shaw filed his amended complaint against a part of the defendants in the cause, viz.: Peter C. Lawyer, Frederick Baggs, Mrs. Frederick Baggs, Edward K. Hall and Mary J. Hall, his wife, omitting one of the then existing defendants, the Merchants National Bank. The complaint sought to quiet the title to a certain described tract of land in Hamilton county, Indiana, against the defendants, who were alleged to claim some title thereto.

Prior to the above order of the court for the reformation of the issues, the Merchants National Bank had filed her answer and counter-claim. Subsequently to said order and the filing of the amended complaint of the plaintiff Shaw against the other defendants, the other parties proceeded to reply to, and answer, said answer and counter-claim of the bank. The record, in the further progress of the cause, became confusion worse confounded.

Various issues, and between various parties, were formed and tried by a jury. There were answers to interrogatories, and a general verdict.

Motions were interposed for a new trial, for a *venire de novo*, and in arrest of judgment, etc., but they were all overruled, and final judgment rendered.

The evidence is not in the record, and no objection is

made by counsel, in argument, to any instruction given by the court, and no complaint on account of the refusal of any.

The assignment of errors by appellant Shaw is as follows:

1. The court erred in overruling demurrer of appellant to the second and third paragraphs of the cross-complaint of the Merchants National Bank;

2. In overruling the demurrers of appellant to the first, second, third and fifth paragraphs of the answer of Frederick Baggs;

3. In overruling appellant's motion for a new trial; and,

4. In overruling appellant's motion for judgment on the pleadings, and on the general verdict of the jury in favor of Lawyer and the Halls, and the special findings of the jury in answer to interrogatories, notwithstanding the general verdict in favor of the Merchants National Bank against said plaintiff.

The assignment of errors by Lawyer and Hall is as follows:

1. The cross-complaint of the Merchants National Bank does not state facts constituting a cause of action against appellants;

2. The court erred in overruling the motion of Lawyer and the Halls for judgment in their favor on the general verdict and findings of the jury;

3. In overruling the motion of Lawyer & Hall for a judgment against the Merchants National Bank for three thousand seven hundred and fifty dollars;

4. In its ruling on the motion of Lawyer and the Halls for judgment in their favor on the verdict and findings of the jury, in this, to wit: that the court says, which motion "is sustained, but that they take nothing by their verdict;" and,

5. In overruling the motion of Lawyer & Hall for a *venire de novo*

The record does not show the filing of the demurrers mentioned in the assignments of error.

The counter-claim of the Merchants National Bank was not objected to below, and it is clearly good after verdict. There was no motion to make it more certain in its statements.

There is nothing in the errors assigned by Shaw. A brief statement of the pleadings, and of the verdict and answers to interrogatories of the jury, will be necessary to a proper appreciation of the errors assigned by Lawyer and Hall.

The plaintiff Shaw alleged, in his amended complaint, that, on the 5th of December, 1870, Lawyer and Hall and his wife conveyed to William Sharts a parcel of land, describing it, without consideration, to be held by him that he might convey it to whomsoever they might direct; that some time afterward the name of Frederick Baggs was substituted as grantee for that of Sharts, he, Baggs, to hold the land to be conveyed as the grantors should direct; that afterward he, the plaintiff, purchased said tract of land of said Lawyer & Hall for a valuable consideration, but that Baggs refused to convey the same to him, and this suit is to quiet Shaw's title.

Baggs answered, that Lawyer & Hall became largely indebted to the Merchants National Bank in Indianapolis; that he was the cashier of said bank, and that the land was conveyed to him, to hold in trust for said bank, as security for said debt and further advances, which are due and unpaid; that he knew of no defect in the execution of the deed, and that Shaw purchased with full notice, etc.

The Merchants National Bank was admitted a defendant, and filed an answer and counter-claim against Lawyer & Hall, Shaw and others, alleging the same facts (setting out particulars more fully) as were alleged by Baggs, and praying the foreclosure of said trust-deed to Baggs as a mortgage.

Lawyer & Hall replied and answered to the answer of Baggs and the answer and counter-claim of said bank, that they had transferred to the bank, as security for their indebtedness to her, a lease for years on a piece of ground on which was a grain elevator, and put the bank in possession of said property, to be by her well used and taken care of, she applying the proceeds of its use to the payment of the debt of said Lawyer & Hall to the bank; and that, while the bank so had the said property in use, she greatly damaged it, which damage, as well as the compensation for the use, they pray may be set off against, and recouped from, their debt to the bank.

Shaw answered the counter-claim of the bank. He alleged that the bank had been paid; that she had recovered a personal judgment for her claim; that she had received other security, as answered by Lawyer & Hall.

The cause was tried by a jury, and the following verdict and answers to interrogatories returned into court:

"We, the jury, find for the Merchants National Bank, as against Shaw.        OLIVER P. ROOKER, Foreman.

"We, the jury, find for Peter C. Lawyer, Edward K. Hall and Mary J. Hall.        OLIVER P. ROOKER, Foreman."

Interrogatories of the Merchants National Bank, and answers thereto:

"Was not the deed, in the cross-complaint of the Merchants National Bank described, delivered to Frederick Baggs, cashier of said bank, by Durbin, the clerk of Lawyer & Hall, in pursuance of the directions of Lawyer? "Yes.

"Were not Lawyer & Hall, at the time of such delivery of such deed, partners? "Yes.

"Was not the real estate described in said deed, at the time of the delivery thereof, the partnership property and assets of said firm? "Yes.

"Was not the said firm of Lawyer & Hall indebted to

said bank at the time of the delivery of said deed to said bank?

" Yes.

" Was not the amount of the indebtedness of said Lawyer & Hall to said bank, at the time of the delivery of said deed, $8,000 ? If not, how much was it?

" Yes.

" In a suit in the Hendricks Circuit Court, wherein the Merchants National Bank was plaintiff, and Lawyer & Hall and Joseph B. Randall were defendants, did not said Randall file a cross-complaint on the 29th day of April, 1873, against said Lawyer & Hall and said bank, in which it was alleged that the aforesaid deed from Lawyer & Hall, dated Dec. 29th, 1870, was made to secure the indebtedness of said Lawyer & Hall to said bank, and that the real estate was held by said bank under said deed ?

" Yes.

" Did not Lawyer & Hall file an answer to the cross-complaint of Randall, in said cause, denying the allegations of the said cross-complaint of Randall ?

" Yes.

" Did not the Merchants National Bank also file a reply in said cause to the said cross-complaint of said Randall ?

" Yes.

" Did not the jury to whom said cause was submitted, upon the issues thus joined, in their verdict find, specially, as follows, in answer to the 5th interrogatory propounded to them by the court:

" ' 5. Did the defendants, Lawyer & Hall, convey to Frederick Baggs the Hamilton county lands in trust for the bank, as security for what was due from them to the bank? and if so, is the same now so held? Answer. It is so held.' ?

" Yes.

" Was not said deed delivered by Durbin, as the agent

of Lawyer & Hall, to said Baggs, to secure the indebtedness of said Lawyer & Hall to said bank?

" Yes.

" Was any information given to the bank, at the time of the delivery of said deed, or to any officer thereof, that the name of Sharts had been erased, and the name of Baggs inserted in said deed?

" No.

" Did not the bank extend the time of the collection of such indebtedness, and forbear to bring suit thereon, till September, 1872, after the delivery of said deed?

" Yes.

" Did not the bank advance to Lawyer & Hall $4,500 after the delivery of said deed, in addition to the $8,000 due at the time of such delivery?

" Yes.

" Was not Lawyer authorized by Hall to sell or convey the land in controversy, for the firm?

" Yes.

" In the said suit in the Hendricks Circuit Court, did not the jury find in their verdict, upon the issues joined, that the bank had received from the judgment against the city of Indianapolis, $6,692.48; rents from Elliott & Berry and int., $828.15; Snowden note and int., $21.75; rent of land and int., $222; insurance, $24; in all, $7,788.38, on account of Lawyer & Hall? If not, how much did they find?

" Yes.

" Did not said jury find, in said cause, upon the issues joined between said parties, that of said sum so received by the said bank, on acct. of Lawyer & Hall, $1,153.35, and $9.30 costs, were applied to the payment of an indebtedness of Lawyer & Hall to the bank on a judgment against them in favor of the First National Bank of Shelbyville, assigned to said Merchants National Bank (12th Int.)?

" Yes.

" Did not said jury find, in said cause, upon the issues joined between said parties, that the balance of said sum received by said bank was applied in payment of an unsettled account due from Lawyer & Hall to the bank, except $6,059.17?

" Yes.

" Did not the jury find, in said cause, upon the issues joined between said parties, that the notes for $12,500, filed with the complaint in said cause, were only entitled to credit in the sum of $6,059.17?

" Yes.

" Did not Lawyer & Hall, on the — day of ——, direct in writing the Merchants National Bank to apply $2,000 of the sum received from the city, in payment of the note of Lawyer & Hall, endorsed by Jacob Denny?

" Yes.

" Was not said note, endorsed by Jacob Denny, executed by Lawyer & Hall after the delivery of the mortgage or trust deed to Baggs?

" Yes.

" Did not the jury find, in said cause, in Hendricks Circuit Court, upon the issues joined between said parties, that said Lawyer & Hall were indebted to said bank in the sum of $7,378.98, and was not judgment rendered against Lawyer & Hall, in favor of said bank, for said sum, on the 19th day of May, 1873?

" Yes.

" Has any payment been made on said judgment since it was rendered? If so, when and how much?

" None.

" Was not the conveyance from Lawyer & Hall to Frederick Baggs, set forth in the cross-complaint, recorded in the recorder's office of Hamilton county on the 4th day of April, 1871?

; " Yes.

" Was not Riley Garris placed in possession of the land

·described in said deed, as tenant of the Merchants National Bank, with the consent of Hall?

"·Yes.

"Did not said Garris hold possession of said lands from March, 1872, till after the conveyance to James Shaw, as the tenant of said bank?

"Yes.

"Has James Shaw ever paid any purchase-money on said lands conveyed to him by Lawyer & Hall on the 6th day of November, 1872? If so, how much of said purchase-money has he paid, and when did he pay it?

"None.

"Have there been any business transactions between Lawyer & Hall and said bank since the judgment was rendered in favor of the said bank, against them, on the 19th day of May, 1873? If so, what?

"None.

"In said suit in Hendricks Circuit Court, did not the jury find, upon the issues joined between said parties, that the transfer of the elevator by Lawyer & Hall to the bank was made to secure their indebtedness to the bank, and that it was held by the bank as security for said indebtedness?

"Yes.

"Was the Merchants National Bank guilty of any negligence, as alleged in the 5th paragraph of the answer of Lawyer & Hall? If so, state precisely and fully in what that negligence consisted.

"Yes. 1st. In failing to renew the lease held by said Lawyer & Hall on said elevator property, leased to them by Joseph Marsee, his heirs or assigns, thereby preventing said Lawyer & Hall from removing said property. 2d. And further, in failing to sell said property before the expiration of said lease and applying the proceeds of said sale to the liquidation of all or a part of said debt owing to said Merchants National Bank from said Lawyer & Hall.

" Was not the lease to Shaw of the elevator property made without the knowledge and consent of Lawyer?

" Answer.    By his knowledge, and without his consent.

" O. P. ROOKER, Foreman."

Interrogatories propounded by Lawyer & Hall:

" Did said defendants Lawyer & Hall place the property mentioned in said paragraph in the possession and custody and under the control of said bank, to be by her held, properly cared for and sold for the purposes set forth in said 5th paragraph?

" Yes.

" If your answer to the above question is 'yes,' then, was the said bank guilty of negligence in the care, custody and management of said property?

" Yes.

" What was the reasonable value of the property referred to in the two preceding questions?

" $6,000.

" Was the property referred to in the three preceding questions wholly lost to said Lawyer & Hall by reason of the said negligence of said bank?

" No.

" If your answer to the preceding question is 'yes,' then what amount of damage did Lawyer & Hall sustain by reason of the said negligence and the loss of said property?

" $3,750.                OLIVER P. ROOKER, Foreman."

" Did Mr. or Mrs. Hall authorize Lawyer to strike out the name of Sharts, and insert the name of Baggs, in the deed to the Hamilton county land?

" No.

" Was the name of Sharts stricken out of the deed to the lands mentioned in the cross-complaint of the bank, without the knowledge, consent or authority of Hall and wife, or either of them?

" Yes.                O. P. ROOKER, Foreman."

There is no bill of exceptions in the record, showing

the ruling of the court, and the grounds thereof, and exceptions thereto, upon any motion made in the cause, save that of Lawyer & Hall for a *venire de novo*. We can not notice those rulings.

The journal entry of the clerk is, that such and such a ruling was made and excepted to, but that is all. Such a bill was necessary. *Aurora Fire Ins. Co.* v. *Johnson*, 46 Ind. 315.

The motion for a *venire de novo* was in the words following:

" The defendants Lawyer & Hall move the court for a *venire de novo* in the above entitled cause, for the following reasons, to wit:

" 1. Because the verdict is imperfect in this, to wit, that the jury failed to assess the amount of damages sustained by said Lawyer & Hall.

" 2. Because the jury found less than the whole matter in issue, by not assessing their damages, nor the amount of their damages, on the 5th paragraph of their answer, upon which paragraph the jury found that the amount of their loss, by reason of the negligence of the Merchants National Bank, was $3,750."

The motion was overruled, and exception taken.

The 5th paragraph of answer was the one setting up the loss of the elevator by the negligence of the bank.

The cause was tried, and the verdict rendered, at the April term, 1874.

At that term, Lawyer & Hall filed a motion for judgment on the verdict and answers to interrogatories, against the Merchants National Bank, which motion was taken under advisement till the September term. At that term the court sustained the motion, and rendered judgment that they take nothing by their verdict, but recover costs. Afterward, at the September term aforesaid, Lawyer & Hall moved for a *venire de novo*, on account of alleged defects in the verdict, which motion was overruled, and exception saved.

This motion was made out of proper time. We incline to think, that it could not properly be made after a motion for judgment sustained, and judgment rendered, on the original verdict.

The judgment is affirmed, with costs.

## ON PETITION FOR A REHEARING.

PERKINS, J.—April 24th, 1878.

A petition for a rehearing has been filed and duly considered. It makes two points:

1. That the court is wrong in holding, that a bill of exceptions is necessary to present to the Supreme Court the grounds of decision in the court below on motions, etc., not required by statute to be made in writing, where the grounds are not entered in the decision.

In this, there was no error. We cite *Ferrier* v. *Deutchman*, 51 Ind. 21; *Vanderkarr* v. *The State*, 51 Ind. 91; *Scotten* v. *Divilbiss, ante*, p. 37.

2  That the court is in error, in holding that the motion for a *venire de novo* was made out of proper time.

That motion was made after a motion for judgment on the general verdict and answers to interrogatories, taken together, made by the same party, had been sustained, and judgment thereon given, as set forth in the original opinion. It is said, in *Jenkins* v. *Parkhill*, 25 Ind. 473, that, in logical sequence, a motion for a *venire de novo* comes before a motion for a new trial. But, waiving the question of the time of the motion, it may be observed, that a motion for a *venire de novo* is not provided for in our code of practice. It is a resort to common-law practice in this particular, adopted by our courts. *Bosseker* v. *Cramer*, 18 Ind. 44. It may be granted by the court in a proper case; and, had it been granted in this case, this court might not have set aside the grant. The *nisi prius* court had much discretion in the matter. The appellate court will not interfere, unless it appears that there has

been an abuse of that discretion. It does not appear, in this case, that that discretion was abused. See *Mason* v. *Palmerton*, 2 Ind. 117.

It may be further observed, that the motion for judgment, mentioned in the opinion, was general and special. There was no motion to set aside that rendered, and render a different one. If that rendered was not the proper one, we are not prepared to say that the verdict and special findings were not sufficient to uphold the proper judgment, if steps that might have been taken had been taken to obtain the entry of such judgment.

We can not say that a *venire de novo* was necessary.

Petition for a rehearing overruled.