## BUCHANAN et al. v. DAVIS et al.

### No. 1114.

Court of Civil Appeals of Texas. Waco.
Oct. 1, 1931.

Rehearing Denied Nov. 19, 1931.

**280**

Touchstone, Wight, Gormley & Price, R. G. Storey, and Robt. Thompson, all of Dallas, for appellants.

Julian B. Mastin, of Dallas, for appellees.

GALLAGHER, C. J.

This appeal is prosecuted from a judgment of the district court establishing the respective interests of the parties hereto in and to the estate of Ophelia B. Buchanan, deceased, adjusting the equities arising out of the use, occupation, and control thereof since her death by certain of the parties hereto, ordering the entire estate remaining on hand sold for the purpose of effecting partition, and directing the distribution of the proceeds of such sale. Mrs. Ophelia B. Buchanan died on the 20th day of August, 1917. She left surviving her husband, W. M. Buchanan, two sons, A. J. Buchanan and C. P. Buchanan, born of a former marriage, two grandchildren, Milton Buchanan and Loleta Buchanan, the only issue of her deceased son, Will Buchanan, also born of said marriage, a son, Orville Buchanan, and a daughter, Olive Buchanan Odom, the only issue of her marriage to her said surviving husband. Said Loleta Buchanan thereafter married Frank Davis,

and said Olive Buchanan Odom thereafter married Robert Thompson. The estate of the deceased at the time of her death consisted wholly of her half interest in the community estate of herself and her surviving husband, which entire community estate was at that time of the approximate net value of $78,500.

The deceased, Mrs. Ophelia Buchanan, left a written will, signed by her and attested by subscribing witnesses. By the terms thereof, with the exception of some minor legacies consideration of which is here unnecessary, she bequeathed and devised her entire estate to her surviving husband for and during his natural life, with absolute power of sale, disposition, and reinvestment, with the remainder at his death to the said two children of herself and her said surviving husband. He was also named as executor in said will. Said will was on November 6, 1917, duly admitted to probate without contest and he immediately qualified as executor thereof. He continued in possession of said community estate, claiming the same in his own right and under the terms of said will. He sold valuable properties and invested a part of the proceeds of such sale in certain real estate in the city of Dallas. On the 5th day of April, 1924, he, individually and as such executor, agreed to convey to Mrs. Olive Odom by general warranty deed a certain house and lot in the city of Dallas used as a homestead by the deceased and himself at the time of her death, and also to convey to her the household furniture situated and used therein and to pay her the sum of $500 in money. She agreed to accept the same in full settlement of all her right to and interest in the estate of her deceased mother, and in consideration thereof to relinquish to him all such right and interest. He had theretofore remarried and his wife joined him in executing said agreement. Such deed was duly executed and the possession of said house and lot, together with the personal property stipulated in said agreement, was delivered to Mrs. Odom. She immediately entered into the use and occupancy of said property and claimed the same as her own continuously until the time of trial. On the 13th day of May, 1924, he, individually and as such executor, agreed to convey to Orville Buchanan by warranty deed a certain house and lot in the city of Dallas. By the terms of such agreement Orville was permitted to occupy certain rooms in said building. The rentals arising from the remainder of said building were reserved and made payable to said executor for a period of three years from such date. Said property was incumbered with a lien to secure an indebtedness of $3,500, which Orville agreed to assume. He (Orville) agreed to accept the same in full settlement of all his right to and interest in the estate of his deceased mother, and in consideration thereof to relinquish to

such executor all such right and interest. Such deed was duly executed and the possession of said house and lot, except as to the rentals so reserved, was delivered to him. He continued in possession thereof and claimed the same as his own continuously until the time of trial.

Loleta Buchanan, who was a minor at the time of the death of her grandmother, Mrs. Ophelia Buchanan, married July 1, 1923, and became twenty-one years of age on December 6th of that year. Milton Buchanan was born in August, 1910, and his minority continued during all the subsequent proceedings. Some time in October, 1924, Loleta Davis, joined by her husband Frank Davis, A. J. Buchanan, for himself and as next friend for Milton Buchanan, and C. P. Buchanan instituted an action in the county court to contest the validity of the will of Mrs. Ophelia Buchanan. Said executor, W. M. Buchanan, Orville Buchanan, Mrs. Olive Odom Thompson, her husband, Robert Thompson, and all others to whom legacies were bequeathed in said will were made parties defendant in such proceeding. Contestants alleged therein that Mrs. Ophelia Buchanan did not have testamentary capacity at the time she executed said will and that the same was procured by undue influence exerted upon her by her husband and by fraudulent representations made to her by him. The disposition of said contest in the county court is not shown, but the same was carried to the district court and a trial thereof had on June 29, 1926. The issues were submitted to a jury and a verdict returned sustaining each of said grounds of contest. Judgment was accordingly entered annulling said will. Said judgment was finally affirmed by the Supreme Court on January 23, 1929 [12 S.W.(2d) 978] and motion for rehearing therein was overruled March 27, 1929 [15 S.W.(2d) 562].

Mrs. Loleta Davis, joined by her husband Frank Davis, C. P. Buchanan, and A. J. Buchanan, for himself and as next friend for Milton Buchanan, contestants in said proceeding to annul the will of Mrs. Ophelia Buchanan, hereinafter called appellees, on the 6th day of July, 1929, instituted this suit against said W. M. Buchanan, hereinafter called by name, and Orville Buchanan, Olive Odom Thompson, her husband Robert Thompson, hereinafter called appellants, and others not necessary to mention, to establish and recover their interest as heirs at law of Mrs. Ophelia Buchanan in five several tracts of real estate situated in the city of Dallas, for a partition of the same and for an accounting of rents and revenues thereof. The pleadings of the parties hereto cover eighty-five pages of the transcript. A comprehensive statement of the substance thereof is not deemed necessary. Appellees alleged, in substance, that said five pieces of property were all that remained of the community estate of said W. M. Buchanan and his deceased wife; that two of said pieces of property, one held by said surviving husband and the other by Mrs. Thompson, were on hand at the death of Mrs. Buchanan; that the other three of said pieces of property were all purchased by said W. M. Buchanan out of the proceeds of the sale of properties belonging to the community estate of himself and his deceased wife; that he had conveyed one of the same to Orville Buchanan, as hereinafter shown; and that W. M. Buchanan had dissipated and appropriated to his own use the remainder of such community estate and more than his original share or interest therein. They set out in substance the settlement agreements under which Mrs. Thompson and Orville Buchanan received the respective properties held by them and alleged that they and each of them made said settlement and received said property with full knowledge of the invalidity of the will of Ophelia Buchanan, deceased, and with full knowledge that their father, W. M. Buchanan, had prior to the conveyance of the same to them dissipated his full share of such community estate. Appellants pleaded that they made their respective settlements with their father and received the respective properties held by them in good faith; that they had paid taxes on said property, kept same insured, and made valuable repairs and improvements thereon. They also pleaded limitation and laches against the adult appellees. They asked that in event appellees were permitted to recover any part of the property involved herein, that their interests should first be satisfied out of the properties remaining in the hands of their father, W. M. Buchanan.

The case was tried by the court with the aid of a jury. The parties agreed that the five pieces of property involved herein were all that remained of the community estate of said parties and that two of the same were held by appellants; that the aggregate value of said five pieces of property was the sum of $51,000; that the incumbrances thereon amounted to $11,900, leaving the net value thereof $39,100. They further agreed that the value of the property held by Mrs. Thompson was $11,500; that the value of the property held by Orville Buchanan was $12,000, with an incumbrance of $3,500 thereon; and that the value of the remainder of the property involved was $27,500, with incumbrances to the amount of $8,400 thereon. They also agreed upon the amount of rents and revenues received and expenses incurred and improvements made on such several pieces of property, as the basis for an accounting between them. The court submitted the case to the jury on six special issues. The jury found in response to three of such issues in substance as follows:

(a) That Orville Buchanan, on the 13th day of May, 1924 (the date of his settlement with his father), was in possession of such facts as would put a reasonably prudent person on no-

tice that the will of his said mother, Mrs. Ophelia Buchanan, was procured by his father, W. M. Buchanan, by exerting undue influence upon her.

(b) That Orville Buchanan, on said date, was in possession of such facts as would put a reasonably prudent person on notice that his said mother at the date she executed said will did not possess testamentary capacity.

(c) That Orville Buchanan on said date was in possession of such facts as would put a reasonably prudent person on notice that the community estate of his said father and mother was then of a lesser reasonable cash market value than when his father qualified as executor and took possession thereof.

The jury further found, in response to the remaining three issues submitted, that Mrs. Olive Odom Thompson, on the 5th day of April, 1924 (the date of her settlement with her father), was also in possession of all such facts. The court made additional findings of fact. He included therein specific findings as follows: (a) that W. M. Buchanan had dissipated his half interest in the community estate prior to his settlement with appellants; that he owned no equitable interest in the properties in controversy at that time, but that the equitable title thereto at the date of such settlements was in the lawful heirs of Mrs. Ophelia Buchanan; (b) that by virtue of such settlements, Mrs. Olive Odom Thompson acquired the interest of her brother, Orville, in the property conveyed to her, and that he acquired her interest in the property conveyed to him, but that the interest of appellees in said respective properties was not divested by such settlements and conveyances; (c) that by virtue of his settlement with Mrs. Olive Odom Thompson and Orville Buchanan, respectively, said W. M. Buchanan acquired their respective interest in the other three pieces of property retained by him in such settlement; (d) that appellees were entitled to three-fifths of the net rents and revenues of each of said respective pieces of property; (e) that none of the property was susceptible of partition in kind and that it was necessary that all the same be sold to effect an equitable partition and accounting between the parties.

The court rendered judgment upon the findings of the jury, the facts agreed upon by the parties, and the supplementary findings made by him as aforesaid. Said judgment covers thirty pages of the transcript. So far as we deem the provisions thereof material to a consideration of the issues of law hereinafter discussed, the court adjudged to appellees an undivided three-fifths interest in each of the five pieces of property involved herein, to Mrs. Olive Odom Thompson an undivided two-fifths interest in the property conveyed to her, to Orville Buchanan an undivided two-fifths interest in the property conveyed

to him, and to W. M. Buchanan an undivided two-fifths interest in the remaining properties. He ordered all of said property sold, subject to existing incumbrances thereon, for the purpose of partition, and directed that appellees should be first paid out of the proceeds of the sale of each of said respective pieces of property the amount awarded them as compensation for the use and occupancy of the same by the holder thereof, and that the remainder of the proceeds of the sale of each of said pieces of property should be paid according to the interest of the respective parties therein as stated in said findings.

Appellants and W. M. Buchanan filed motions for a new trial. Both said motions were overruled. W. M. Buchanan perfected an appeal to this court but has filed no brief. Appellants present said judgment for review upon various assignments of error duly briefed.

### Opinion.

Appellants contend that appellees A. J. Buchanan and C. P. Buchanan, having been of lawful age at the time the will of the mother, Mrs. Ophelia Buchanan, was probated, and having permitted more than four years to elapse after such probate without instituting suit to contest the same, could not claim any benefit from the contest instituted and annulment of such will secured by the minor heirs of said Mrs. Buchanan nor any interest in her estate on account of such annulment. The right of such minor heirs, notwithstanding four years had elapsed since the probate of the will of Mrs. Ophelia Buchanan, to institute proceedings to contest the same and the validity of the judgment annulling the same as a result of such contest, are not denied by appellants. The Commission of Appeals in affirming such judgment held that these appellees were properly permitted to join in the prosecution of such contest. Buchanan v. Davis, 12 S.W.(2d) 978, 980, par. 3. Appellants' specific contention is that such annulment inured only to the benefit of said minors. Our Supreme Court has held that an action to probate a will is a proceeding in rem; that a judgment of probate rendered therein is binding on all the world until revoked or set aside; and that such judgment inures to the benefit of everyone affected thereby, whether in default in making timely application for such probate or not. Masterson v. Harris, 107 Tex. 73, 174 S. W. 570, 573 et seq. The reasoning upon which the opinion of the Supreme Court in that case is founded leads necessarily to the conclusion that a judgment setting aside or annulling the probate of a will inures to the benefit of all persons interested in the estate attempted to be disposed of thereby. The Commission of Appeals so held in Buchanan v. Davis, supra. The rule is succinctly stated in 40 Cyc. 1370 as follows: "Although, on account of the right being saved

to him by disability, only one person has the right to contest the probate, a decree setting aside probate inures to the benefit of all interested parties." The following authorities support such rule: Powell v. Koehler, 52 Ohio St. 103, 39 N. E. 195, 196, 26 L. R. A. 480, 49 Am. St. Rep. 705; Wells v. Wells, 144 Mo. 198, 45 S. W. 1095, 1096; Maurer v. Miller, 77 Kan. 92, 93 P. 596, 598, 127 Am. St. Rep. 408, 15 Ann. Cas. 663; Bradford v. Andrews, 20 Ohio St. 208, 5 Am. Rep. 645, 646; Weichold v. Day, 118 Kan. 598, 236 P. 649, 651; Leach v. Prebster, 39 Ind. 492; Floyd v. Floyd, 90 Ind. 130. We accordingly hold that the judgment annulling Mrs. Buchanan's will inured to the benefit of all her legal heirs.

▆▆▆ Appellants contend that said A. J. Buchanan and C. P. Buchanan were barred from recovering any part of the estate of Ophelia Buchanan, deceased, and from participating in a partition thereof by the provisions of the ten-year statute of limitation (Rev. St. 1925, art. 5510). The specific contention advanced in this connection is that the cause of action arose for such recovery and partition immediately upon the death of Mrs. Ophelia Buchanan and that an adverse claim to her interest in the estate was asserted by W. M. Buchanan, the surviving husband, on or about the 17th day of October thereafter, when he in a letter to A. J. Buchanan stated that he had filed her will for probate, claimed the benefits thereof, and asserted a purpose to resist any attempt to contest the same. There is no contention that such claim was not consistently maintained nor that continuous possession was not held thereunder for more than ten years prior to the institution of this suit. Our statute on descent and distribution provides, in substance, that where any person having title to any estate of inheritance, real or personal, shall die intestate, such estate shall descend and pass to his heirs as therein provided, and that upon the death of a husband or wife leaving a child or children, one-half of the community estate shall pass to such child or children or their descendants. R. S. arts. 2570 and 2578. By the express terms of such statute, heirship is made dependent upon intestacy. Mrs. Ophelia Buchanan left a purported will, duly executed and witnessed in the manner and form provided by law, and same was duly filed for probate at the time the surviving husband asserted such adverse claim thereunder. The probate court was invested, under the Constitution and laws (Const. art. 5, § 16; Rev. St. 1925, art. 3290) with exclusive jurisdiction to determine the validity of such will. Until such issue was determined appellees could not maintain a suit to establish any right in the estate of their deceased mother as her heirs at law. The probate court promptly exercised its jurisdiction and admitted said will to probate. The effect of such action related back to the death of Mrs. Buchanan and title under such will vested in the devisees as of that date. March v. Huyter, 50 Tex. 243, 253; Long v. Shelton (Tex. Civ. App.) 155 S. W. 945, 948, pars. 14 and 15 (writ refused). Such judgment of probate was not void but voidable only. So long as it remained in force it constituted a complete bar to the maintenance of such action by appellees. They therefore first instituted proceedings to contest the validity of said will and to set aside the order of the court establishing and probating the same. Having secured a judgment setting aside said probate and annulling said purported will, they promptly instituted this suit to recover their interest as heirs at law in their mother's estate. Limitation against their right to maintain such suit therefore began to run only when such judgment became effective. Deaton v. Rush; 113 Tex. 176, 185 et seq., 252 S. W. 1025; Hensley v. Conway (Tex. Civ. App.) 29 S.W.(2d) 416, 418, par. 4; Garza v. Kenedy (Tex. Com. App.) 299 S. W. 231, 234, par. 13; Walling v. Rose (Tex. Civ. App.) 2 S.W.(2d) 352, 355, par. 5. The ten-year statute of limitation (supra) therefore constitutes no barrier to the maintenance of this suit by A. J. and C. P. Buchanan.

▆▆▆ Appellants contend that the court erred in requiring them to account to appellees for the value of the use and occupation of their respective properties during the time they personally held the same. They contend they were not liable therefor until demand for joint possession of such properties had been made by appellees and refused. The rule contended for by appellants is applicable where tenancy in common is acknowledged and one tenant holds possession of the common property without affirmatively excluding his cotenants. Where such tenancy in common is not acknowledged but denied, and the tenant in exclusive possession asserts an adverse claim to the entire property and holds possession thereof under such claim, the excluded tenants in common may, without demand for joint possession, recover for the use and occupation of their part of the land. Eastham v. Sims, 11 Tex. Civ. App. 133, 32 S. W. 359, 361, et seq., and authorities there cited; Stephens v. Hewitt (Tex. Civ. App.) 77 S. W. 229, 230 (writ refused); Autry v. Reasor, 102 Tex. 123, 127, 108 S. W. 1162, 113 S. W. 748; Markum v. Markum (Tex. Civ. App.) 273 S. W. 296, 298, par. 6, and authorities there cited.

▆▆▆ Appellants, with great earnestness, assail as inequitable and unjust the judgment of the court in so far as it declares and establishes their respective rights in the properties involved herein and provides for their participation in the proceeds of the sale of the same. They advance in this connection two specific contentions. The first is that under the facts recited in the foregoing statement of the case, they were entitled, re-

spectively, to an undivided one-fifth interest in the entire properties involved in this case, instead of being limited to a two-fifths interest in the particular pieces of property conveyed to them, respectively. The second is that under such facts, the court should have required the interest of appellees to be satisfied first out of the sale of the properties involved herein which remained in the hands of W. M. Buchanan after his conveyances to them respectively, and recourse had to the proceeds of the properties conveyed to them only in event a balance remained unpaid after exhausting such former properties, and to the extent only of such balance remaining unpaid. While these contentions are separately advanced, they are in their nature alternative. The award of the relief claimed in one would necessarily exclude the relief claimed in the other. We will consider them in the order presented.

The respective settlements made by the executor with appellants, as shown by the record, were several and not joint. The settlement with Mrs. Thompson, then Mrs. Odom, was made first. The executor, according to the finding of the court, had dissipated more than his community half of the estate of himself and his deceased wife, and therefore had, from an equitable standpoint at least, no personal interest which he could convey to Mrs. Thompson. He, however, claimed title to all the property in his hands in himself and as devisee under the will. No one at that time had attacked the validity of such will nor sought to have the probate of the same set aside. By the terms of the will Mrs. Thompson was entitled to one-half of her mother's interest in such properties on the termination of the life estate therein devised to the executor. The settlement with her was based on such understanding of the situation. Such settlement was in writing and recited that the executor had conveyed the particular piece of property involved in such settlement to her by warranty deed. Such deed was not introduced in evidence. The settlement contract recited that Mrs. Thompson, then Mrs. Odom, accepted the real and personal property conveyed and delivered to her at that time in complete satisfaction, payment, and settlement of the gifts, legacies, and bequests made to her by the last will and testament of her mother, in so far, but in so far only, as such will purported to dispose of her mother's estate, and further stipulated that such receipt should operate as complete satisfaction of all personal rights, actions, or claims, if any, which she might assert against said executor in such capacity or individually. No separate or formal relinquishment or conveyance of her interest in her mother's estate was made. She in fact acquired nothing by such settlement except the immediate possession of the piece of property so conveyed to her. She is required by the judgment rendered to account

to appellees for the use and occupancy of their interest in said property. The executor parted with nothing except such possession. The will of his wife under which he claimed, being invalid, and the entire estate remaining in his hands belonging of right to her children, he was not equitably entitled to such possession nor to any consideration for delivering the same to Mrs. Thompson. Nevertheless, in consideration of the execution and delivery of such ineffective deed, he is awarded by the judgment rendered herein title to Mrs. Thompson's one-fifth interest in the residue of the estate in his hands, such residue being of the agreed net value of $19,-100. We cannot agree with the court that Mrs. Thompson acquired by virtue of such settlement the undivided one-fifth interest of her brother Orville in the estate of the deceased. The settlement agreement between the executor and Orville had not then been made and the same was not made for more than a month thereafter. Whether such subsequent settlement might at her election, because of the executor's warranty, operate as an estoppel against him as to Orville's interest in that particular piece of property, we need not consider. She persistently asserted title to that particular piece of property in its entirety as a bona fide purchaser from the executor. The jury found that she had notice of the invalidity of her mother's will and the court adjudged his conveyance to her void as to the rights of appellees. We nowhere find in her pleadings any assertion that she acquired an undivided interest in that particular property from Orville through said executor. The deed of the executor to her and the settlement agreement, which contained her acknowledgment of the satisfaction of her claims against the estate of her mother and her relinquishment of further interest therein, together constitute her contract of settlement with the executor. Since said deed was not effective in itself to convey to her any interest in the property described therein, there was an undisputed failure of consideration for the relinquishment of her interest in the other property belonging to such estate. The court, at the instance of appellees, ignored said deed as to their interest in that particular piece of property and awarded them a recovery thereof. We think Mrs. Thompson was equitably entitled to have said transaction between her and the executor avoided in toto and her rights as heir of her mother in all the property in controversy herein established. The settlement agreement between the executor and Orville Buchanan is principally distinguishable by the fact that it was subsequent in date to the settlement between the executor and Mrs. Thompson, and by the further fact that the executor reserved the rents and revenues arising therefrom for a period of three years thereafter. We understand appellees to admit in their brief that appellants, upon prop-

er allegations, might have avoided the relinquishments contained in their respective contracts of settlement. Appellees contend, however, that appellants sought to have their agreements of settlement and incidental relinquishment affirmed. We think their pleadings, properly construed, assert that they were purchasers in good faith for a valuable consideration from a duly qualified and acting executor, and that they acquired a valid title to such respective properties under the provisions of article 3323 of our Revised Statutes. Certainly there is nothing in their pleadings intimating a desire to have their relinquishment sustained notwithstanding the conveyance to them was avoided and ignored as to the major part of the property described therein, except as such desire may be inferred from their request that, if appellees were held entitled to recover any part of the properties in controversy, such part upon partition should first be carved out of the properties remaining in the hands of said executor, which request was denied. In determining the relief which might be accorded to appellants under their pleadings, we must take into consideration the allegations contained in the pleadings of the other parties as well as the allegations of appellants' answer. Ormsby v. Ratcliffe (Tex. Com. App.) 36 S.W.(2d) 1005, 1006, par. 1. Our Supreme Court held in this connection in Miller v. Rogers, 49 Tex. 398, 416, that if the plaintiff, in stating his cause of action, states facts showing defendant's right to equitable relief, such relief should be accorded him. We do not, however, find it necessary to determine this issue, because on another trial their pleadings will be amendable and because of the conclusion reached by us in consideration of the issue next discussed.

■ Appellants' second contention, as above stated, is that the court should have required the interest of appellees to be satisfied first out of the sale of the properties remaining in the hands of W. M. Buchanan. Said Buchanan, as survivor of the community, claimed a substantial interest in the properties on hand at the time he settled with appellants respectively. The jury found that appellants were each in possession of such facts as would put a reasonably prudent person on notice that the community estate of their parents was then of a lesser reasonable cash market value than it was at the time the executor took possession of the same. There is no finding by the jury that they were in possession of such facts as would put a reasonably prudent person on notice that he had theretofore dissipated his entire interest in such estate. Neither is there sufficient testimony in the record to sustain such finding. Appellants apparently made their respective settlements in good faith. They took possession of the respective properties conveyed to them, claimed the same in severalty, paid taxes, and expended material

sums in repairs and improvements thereon. These facts raised in their behalf a well-recognized equity to have the interest of appellees, tenants in common with them as heirs of Ophelia Buchanan, deceased, satisfied out of other property belonging to her estate, if this could be done without prejudice to such interest. Since all the property was ordered sold, we do not see how appellees could be prejudiced by requiring the entire proceeds of the other properties applied first to the discharge of their recovery herein. Furrh v. Winston, 66 Tex. 521, 523, 1 S. W. 527; Lasater v. Ramirez (Tex. Com. App.) 212 S. W. 935, 936, par. 1; Heller v. Heller, 114 Tex. 401, 413, 269 S. W. 771; Gosch v. Vrona (Tex. Civ. App.) 227 S. W. 219, 220; Brown v. Brown (Tex. Civ. App.) 230 S. W. 1058, 1060, par. 6; Jordan v. Grandfield Bridge Co. (Tex. Civ. App.) 290 S. W. 866, 870, par. 12. The court erred in denying appellants such relief. For this error the judgment of the trial court will be reversed.

■ Appellees insist that appellants' remedy for the loss of their undivided interest in the property remaining in the hands of the executor is by separate suit on the warranty contained in his respective deeds to them. The court found that the executor had dissipated his entire interest in the community estate of himself and his deceased wife. Nevertheless the court ordered two-fifths of the proceeds of the sale of the property remaining in his hands, after deducting the sums charged against him in accounting, to be paid to him in cash, and thus placed beyond the reach of appellants. Appellees themselves invoked the equitable jurisdiction of the court to adjust the matters in controversy in this suit, and the rule that the court should consider and determine all the rights and claims of the parties relating to the subject-matter and enter a decree affording complete and adequate relief to all parties, to the end that a multiplicity of suits may be avoided and litigation may cease, applies. Appellants should not be required to institute a separate suit at law to recover compensation for the loss sustained by them by the action of the court in awarding appellees part of the proceeds of the sale of the properties held by them without first exhausting the properties retained by the executor, in which it was shown such executor had in fact no interest. 21 C. J. 661; Smith v. Doak, 3 Tex. 215, 217 et seq.; Swope v. Missouri Trust Co., 26 Tex. Civ. App. 133, 62 S. W. 947, 949.

. ■ Appellants assail the finding of the jury that Orville Buchanan, at the time he entered into his settlement contract with the executor, was in possession of such facts as would have put a reasonably prudent person on notice that his mother lacked testamentary capacity and that the will left by her was procured by her husband by exerting

undue influence upon her. We have examined the entire statement of facts on this issue. The only testimony on such issue found therein is that Orville Buchanan resided in Dallas at or about the time of the execution of such will; that his relations with his mother were friendly and that he frequently visited her. Whether he visited her at or about the time of the execution of such will was not shown. The Commission of Appeals predicated the affirmance of the case involving the validity of such will on the ground that there was testimony to support the finding that same was the result of undue influence exerted upon Mrs. Buchanan, and refused to hold that there was evidence of a lack of testamentary capacity. Buchanan v. Davis, supra (Tex. Com. App.) 12 S.W.(2d) 978, page 983; Id. (on rehearing) (Tex. Com. App.) 15 S.W.(2d) 562, par. 3. The testimony in this case wholly fails to show knowledge on the part of Orville Buchanan of any facts tending to show that such will was procured by undue influence or that his mother lacked testamentary capacity at the time she executed the same. We, however, do not predicate the reversal of the case on this ground, because we are of the opinion that there is no sufficient assignment of error to support the same.

The reversal of the judgment of the trial court not only requires a revision thereof on the issue of accounting, but also materially affects the rights of the executor, who has abandoned his appeal, apparently in reliance on the relief accorded him therein. We are therefore of the opinion that the ends of justice will be better served by remanding the cause to the trial court than by any attempt by this court to reform or render the same. Irwin v. Auto Finance Co. (Tex. Civ. App.) 40 S.W.(2d) 871, 873, par. 6, and authorities there cited.

The cause is remanded to the trial court for further proceedings not inconsistent with this opinion.